**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHARLES JACKSON,

     Petitioner,                    Case No. 2:16-CV-13704

v.                                  PAUL D. BORMAN
                                    UNITED STATES DISTRICT JUDGE

CARMEN PALMER,

     Respondent,

_____/

## OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS

Charles Jackson, ("petitioner"), incarcerated at the Michigan Reformatory in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree felony murder, M.CL.A. § 750.316(1)(b); armed robbery, M.CL.A. § 750.529; and conspiracy to commit armed robbery, M.CL.A. § 750.157a(a). For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE.

## I.  BACKGROUND

Petitioner was convicted following a jury trial in the Wayne County Circuit Court.

Petitioner and several women, including his girlfriend, conspired to rob the victim. The plan called for petitioner's girlfriend and her best friend to engage in a three-way sex act with the victim. Petitioner entered the victim's house and struck the victim on the back of the head with a tree branch. When the victim fell, petitioner struck him again to prevent the victim from getting up. Petitioner hit the victim for a third time on the head, in order to render him unconscious. Petitioner and his accomplices subsequently searched the victim's home for money and stole some laptop computers. The victim died as a result of the attack.

On the evening of July 11, 2012, Iashia Knox, Kristan Holmes, Zelda Taylor, and others were at Taylor's house drinking alcohol and smoking marijuana. Petitioner, who was Taylor's boyfriend, was also present. (Tr. 10/22/13, pp. 30-34, 56, 114, 130, 156; Tr. 10/23/13, p. 12). The people assembled at the house talked about "turning a trick" with the victim, Hassan Jaber, meaning they wanted to have sex with him in exchange for money. (Tr. 10/22/13, p. 57). The co-defendants agreed that Taylor and Knox would engage in a "threesome" with the victim at his home. (*Id.*, p. 36). The plan called for one of the women to leave the door open during the sex act so that petitioner could come inside, "knock him [the victim] out," and search the house for money. (*Id.,* pp. 36, 137; Tr. 10/23/13, p. 20). The group traveled to the victim's home. Taylor and Knox went inside, while Holmes

and petitioner remained inside a car in front of the victim's house. (Tr. 10/22/13, pp. 64-65, 69). Taylor, Knox, and the victim went into a bedroom and took their clothes off and began kissing each other. (*Id.*, pp. 66, 68, 70, 141). During this time, Taylor sent a text message to Holmes, which said, "Now." (*Id.*, p. 69). After receiving the text message, Holmes informed petitioner. Petitioner grabbed a tree branch, entered the house, and hit the victim on the back of the head with the branch three times. (Tr. 10/24/13, pp. 18-20).

Petitioner admitted that he went to the victim's house after discovering that the women planned to rob the victim, although petitioner testified that it was supposed to be Holmes's job to enter the house and search for money while the other two women were having sex with the victim. (*Id.*, pp. 16-17). Petitioner testified that when Holmes received the "Now" message, they thought something was wrong inside the house. (*Id.*, p. 18). When petitioner went into the house with the branch, he saw Taylor "shoving off [sic] saying wait a minute." (*Id.*, p. 19). To "stop [Jaber] from whatever he was doing," petitioner struck him on the back of the head. (*Id.*, pp. 19-20). The victim fell and the two women ran out of the room. Taylor told petitioner "just make sure he doesn't get up." Petitioner testified that he hit the victim again "[be]cause he was trying to get back up," and struck him a third time "to make sure that [he] could try to knock him unconscious." (*Id.*, p. 20).

Taylor then searched the house for money and told petitioner to take two laptops off of the table "because she said they were hers anyway." (*Id.*, p. 21).

After the group got into the car to leave, petitioner told the others that he left something. The group returned to the victim's house and petitioner retrieved the tree branch. (Tr. 10/23/13, pp. 31-32; Tr. 10/24/13, p. 21). After returning to Taylor's house, petitioner threw the branch away in a vacant lot next to the house. (Tr. 10/23/13, pp. 33, 99-101).

Petitioner's conviction was affirmed on appeal. *People v. Jackson*, No. 319254, 2015 WL 1313654 (Mich. Ct. App. Mar. 24, 2015); *lv. den*. 498 Mich. 906, 870 N.W. 2d 905 (2015).

Petitioner seeks habeas relief on the following grounds:

I. The trial court committed reversible error, when it obtained Petitioner's conviction by violating Petitioner's state and federal constitutional rights to a fair trial by an impartial and properly instructed jury, contrary to the protections of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, and Constitution 1963, article 1, section 17, and section 20, where the court refused to instruct the jury on the supported defense of defense of others.

II. The trial court violated Petitioner's constitutional right, when it obtained Petitioner's conviction by denying a fair trial and a full opportunity to confront the evidence against him, contrary to the protections guaranteed him by the Sixth Amendment and Const. 1963, article 1, section 20, and also a full opportunity to present his defense under due process guarantees secured by the Fifth and Fourteenth Amendments and Const. 1963, art 1, section 17, when the trial court

allowed one forensic scientist to testify about DNA results obtained by another, absent forensic scientist.

III. The trial court violated the Petitioner's due process right to a fair trial when it obtained his conviction by allowing photographs into evidence which were so unfairly prejudicial that their admission was more prejudicial than probative.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when

"a state court decision unreasonably applies the law of [the Supreme Court] to the

facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

The Court notes that the Michigan Court of Appeals reviewed and rejected petitioner's second claim under a plain error standard because petitioner failed to preserve the issue as a constitutional claim at the trial court level. [1] The AEDPA

---

[1] Respondent urges this Court to deny this claim on the ground that it is procedurally defaulted because defense counsel objected to the admission of the evidence only on state law grounds but did not argue that the admission of this

deference applies to any underlying plain-error analysis of a procedurally

defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

## III. DISCUSSION

### A. Claim # 1. The instructional error claim.

Petitioner argues that the trial court deprived him of a fair trial by refusing

to instruct the jury on the defense of the defense of others, which is a subset of the

right of self-defense.

A defendant in a criminal trial has the right to "a meaningful opportunity to

present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984).

"[A] necessary corollary of this holding is the rule that a defendant in a criminal

trial has the right, under appropriate circumstances, to have the jury instructed on

---

evidence violated the Sixth Amendment right to confrontation. Counsel in this
case did object to the admission of this evidence on the grounds that it was hearsay,
which would appear to be similar to an argument that the admission of this
evidence violated petitioner's right to confrontation. Procedural default is not a
jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522
U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a
procedural-default issue before deciding against the petitioner on the merits."
*Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*,
520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other]
question priority, for example, if it were easily resolvable against the habeas
petitioner, whereas the procedural-bar issue involved complicated issues of state
law." *Lambrix*, 520 U.S. at 525. The Court believes that in light of the
complexities of the procedural default issue, it would be easier to proceed to the
merits of the claim.

his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions." *See Taylor v. Withrow,* 288 F.3d 846, 852 (6th Cir. 2002). A defendant is therefore entitled to a jury instruction as to any recognized defense for which there exists evidence sufficient for a reasonable juror to find in his or her favor. *Mathews v. United States*, 485 U.S. 58, 63 (1988). A state trial court's failure to instruct a jury on self-defense when the instruction has been requested and there is sufficient evidence to support such a charge violates a criminal defendant's rights under the Due Process Clause. *Taylor,* 288 F.3d at 851.

Under Michigan law, one acts lawfully in self-defense if he or she honestly and reasonably believes that he or she is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F. 3d 712, 713, fn. 1 (6th Cir. 1999)(citing to *People v. Heflin*, 434 Mich. 482, 456 N. W. 2d 10 (1990)). To be lawful self-defense, the evidence must show that: (1) the defendant honestly and reasonably believed that he or she was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002)(citing *People v.*

*Barker*, 437 Mich. 161, 165, 468 N.W. 2d 492 (1991); *People v. Kemp*, 202 Mich. App. 318, 322, 508 N.W.2d 184 (1993); *People v. Deason*, 148 Mich. App. 27, 31, 384 N.W.2d 72 (1985)). Under Michigan law, a defendant is not entitled to use any more force than is necessary to defend himself or herself. *Johnigan,* 207 F. Supp. 2d at 609 (citing *Kemp*, 202 Mich. App. at 322). "[T]he law of self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Johnigan,* 207 F. Supp. 2d at 609 (internal citation omitted). In Michigan, the right to act in self-defense also includes the right to defend another person. *Id.* (citing *People v. Curtis*, 52 Mich. 616, 622, 18 N.W. 385 (1884); *People v. Wright*, 25 Mich.App. 499, 503, 181 N.W.2d 649 (1970)).

The Michigan Court of Appeals rejected petitioner's claim:

In the instant case, defendant asked the trial court to instruct the jury on the defense of others. The self-defense act (SDA), MCL 780.971 et seq., "codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *People v. Dupree*, 486 Mich. 693, 708; 788 NW2d 399 (2010). The SDA, MCL 780.972(1), provides:

An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual

anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

(b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual.

The trial court did not abuse its discretion in refusing to instruct the jury on the defense of others because defendant failed to present evidence on all the elements of the defense. See *Guajardo*, 300 Mich.App at 34–35. [2] An individual asserting a defense of others defense must show that he is somewhere he has a legal right to be and is not engaged in the commission of a crime. See MCL 780.972(1). Defendant, Zelda Taylor, Iashia Knox, and Kristan Holmes were clearly engaged in the commission of a crime when defendant used deadly force against Hassan Jaber. All of these individuals testified that they planned to rob Jaber. Although their accounts varied in some respects regarding the specifics of the robbery, it was undisputed that they drove to Jaber's house with the intent to rob him. Knox and Taylor were engaged in a threesome with Jaber to distract him while Holmes or defendant entered Jaber's home to search for money. Similarly, defendant did not have a legal right to be in Jaber's house and bedroom. Defendant entered Jaber's home without his permission or an invitation.

In addition, to use deadly force against an individual, a defendant must also "honestly and reasonably believe[ ] that the use of deadly force is necessary...." MCL 780.972(1). Defendant appears to claim that the use of deadly force was necessary to prevent the imminent sexual assault of Taylor. However, defendant testified that he hit Jaber on the head with

---

[2] *People v. Guajardo,* 300 Mich. App. 26, 832 N.W. 2d 409 (2013).

the tree branch three times.  The first time he hit Jaber, Jaber fell. Taylor and Knox then ran from the room.  At this point, the use of deadly force was no longer necessary to prevent the imminent sexual assault of Taylor or Knox.  Nonetheless, defendant hit Jaber on the head with the tree branch two more times.  Thus, defendant's own testimony does not support a defense of others defense.

*People v. Jackson*, 2015 WL 1313654, pp. 1–2.

Petitioner is not entitled to habeas relief on his claim.  The Michigan Court of Appeals concluded that petitioner was not entitled under Michigan law to an instruction on the defense of others because he and his co-defendants were ineligible to raise a self-defense or defense of others claim because they were engaged in the commission of a felony.  The Michigan Court of Appeals also ruled that such an instruction was not appropriate because petitioner had no right to be inside of the victim's home or bedroom.  The Michigan Court of Appeals also concluded that petitioner was not entitled to raise a defense of others claim because there was no danger of an imminent sexual assault to either of the women when petitioner inflicted the second and third blows upon the victim because the women had already left the room.

The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  State courts are the "ultimate expositors of state

law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. *See Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). Likewise, "[D]ue process does not require that a defendant be permitted to present any defense he chooses. Rather, states are allowed to define the elements of, and defenses to, state crimes." *See Lakin v. Stine,* 80 F. App'x. 368, 373 (6th Cir. 2003)(citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)).

Petitioner is not entitled to habeas relief because the trial court's denial of petitioner's defense of others instruction was "expressly authorized" by Michigan law and there is no United States Supreme Court precedent to the contrary. *See Phillips v. Million*, 374 F.3d 395, 398 (6th Cir. 2004). Moreover, "states have great latitude in criminal proceedings, including latitude to formulate both the elements of crimes and the defenses to them." *Taylor,* 288 F.3d at 853. Petitioner is not entitled to habeas relief because the Michigan Court of Appeals concluded that under Michigan law, the evidence did not support a defense of others claim. *Id.* at 853-54. The Court rejects petitioner's first claim.

**B. Claim # 2. The confrontation claim.**

Petitioner claims that his Sixth Amendment right to confrontation was violated when the trial court admitted into evidence a DNA analysis report authored by a non-testifying forensic scientist, Jennifer Jones. Petitioner further claims that his confrontation rights were violated when Ms. Jones's supervisor, Heather Vitta, was permitted to testify about the results of Ms. Jones's report.

Heather Vitta testified at petitioner's trial that she was Ms. Jones's supervisor. Ms. Vitta reviewed Ms. Jones's report but also performed her own independent analysis of the DNA evidence. Ms. Vitta testified that she reviewed the actual DNA types obtained from each evidentiary sample and then compared each of these samples against the reference DNA profiles obtained from petitioner, the victim, and the women. Ms. Vitta determined that a DNA profile obtained from a bloodstain recovered from an interior front door trim matched petitioner's DNA and a bloodstain from a left boot also matched petitioner's DNA. Ms. Vitta testified that DNA obtained from one end of the tree branch matched petitioner's DNA and the DNA from the other end matched the victim's DNA. (Tr. 10/23/13, pp. 138-46). Ms. Vitta emphasized that she performed her own independent analysis of the DNA based on Ms. Jones's report. (*Id.,* pp. 150-51).

The Michigan Court of Appeals rejected petitioner's claim, finding that

there was no plain error in the admission of Ms. Jones's report or in Ms. Vitta

testifying about the contents of the report.  Although acknowledging that the

admission of Ms. Jones's report itself violated the Confrontation Clause, the

Michigan Court of Appeals concluded that Ms. Vitta's testimony concerning Ms.

Jones's report did not violate the Confrontation Clause "[b]ecause the DNA

profiles obtained by Jones were the assumptions on which Vitta's opinion

rested[,]."*People v. Jackson*, 2015 WL 1313654, p. 4.

Out-of-court statements that are testimonial in nature are barred by the

Sixth Amendment Confrontation Clause unless the witness is unavailable and the

defendant has had a prior opportunity to cross-examine the witness, regardless of

whether such statements are deemed reliable by the court. *See Crawford v.*

*Washington,* 541 U.S. 36 (2004).  However, the Confrontation Clause is not

implicated, and thus does not need not be considered, when non-testimonial

hearsay is at issue. *See Davis v. Washington*, 547 U. S. 813, 823-26 (2006).

The Supreme Court has held that scientific or laboratory reports which are

admitted to prove a fact are testimonial statements, for purposes of the Sixth

Amendment right to confrontation. *Bullcoming v. New Mexico*, 564 U.S. 647, 665

(2011); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-311 (2009).  Because

they are testimonial, the reports cannot be admitted into evidence unless the

analysts who wrote them are subject to cross-examination. *Bullcoming*, 564 U.S. at 663; *Melendez-Diaz*, 557 U.S. at 311.

However, in *Williams v. Illinois,* 567 U.S. 50, 57-58 (2012), a plurality of the Supreme Court held that out-of-court statements concerning DNA evidence that are referred to by an expert who testifies for the prosecution solely for the purpose of explaining that expert's own assumptions on which his or her own independent expert opinion is based are not offered for the truth of the matter asserted and therefore fall outside of the Confrontation Clause's scope. Although the holding in the plurality opinion in *Williams* might not qualify as clearly established federal law, it certainly suggests that there is no clearly established federal law which holds that a defendant's right to confrontation is violated when an expert witness testifies to forming an independent opinion after reviewing a report prepared by another expert who does not testify. *See Barbosa v. Mitchell*, 812 F.3d 62, 67 (1st Cir. 2016)(holding that *Williams* suggests that admitting an opinion "by an expert witness who has some connection to the scientific report prepared by another whom she supervised" does not violate the right to confrontation). "Indeed, by blessing the admission of almost identical testimony by a DNA expert, the [Supreme] Court's actual holding in *Williams* might well be read as telling [this Court] that [petitioner] is not, with respect to this issue, being

held 'in custody in violation of the Constitution,' 28 U.S.C. § 2254(a)." *Id.,* at 67.

In the present case, the Michigan Court of Appeals relied on the holding of the plurality in *Williams* to reject petitioner's confrontation claim. The Michigan Court of Appeals concluded that Ms. Vitta's references to Ms. Jones's report did not violate petitioner's right to confrontation because the DNA profiles that were acquired by Jones were the assumptions on which Vitta's own independent opinion were based. Petitioner is not entitled to relief because he failed to show that the decision by the Michigan Court of Appeals was unreasonable.

Assuming that the trial court erred in admitting either Ms. Jones's report or Ms. Vitta's references to the report, petitioner would not be entitled to relief because any error was harmless.

Confrontation Clause violations are subject to harmless error review. *See Bulls v. Jones,* 274 F.3d 329, 334 (6th Cir. 2001). In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. In determining whether a Confrontation Clause violation is harmless under *Brecht*, a court should consider the following factors:

"(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case." *See Jensen v. Romanowski,* 590 F.3d 373, 379 (6th Cir. 2009)(citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

Petitioner has failed to show that the admission of Ms. Jones's report or Ms. Vitta's testimony about the report had a substantial and injurious effect or influence on the verdict. As the Michigan Court of Appeals noted in rejecting petitioner's claim, *People v. Jackson*, No. 2015 WL 1313654, at *4, Taylor, Knox, and Holmes all offered extensive testimony which implicated petitioner in the victim's murder. Petitioner himself admitted to being present at the crime scene, even though he testified that he only assaulted the victim because he believed that the victim had placed the women in danger. Even if petitioner's right of confrontation was violated by the prosecution's introduction of expert DNA testimony based in part on an out-of-court statement of her colleague, any error was harmless in light of the overwhelming evidence of petitioner's guilt. *See Holland v. Rivard*, 800 F.3d 224, 243 (6th Cir. 2015). Petitioner is not entitled to relief on his second claim.

## C.  Claim # 3.  The evidentiary error/prosecutorial misconduct claims.

In his third claim, petitioner argues that his right to a fair trial was violated by the admission of gruesome and inflammatory photographs of the murder victim.  Petitioner also argues that the prosecutor committed misconduct.

In his third claim, petitioner claims that the trial court erred in admitting irrelevant and prejudicial photographs of the victim.  It is well settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Petitioner's claim that the trial court admitted photographs of the murder victim fails to state a claim upon which habeas relief can be granted. *See e.g. Franklin v. Bradshaw,* 695 F.3d 439, 456-57 (6th Cir. 2012); *Cooey v. Coyle,* 289 F.3d 882, 893-94 (6th Cir. 2002).

Petitioner further claims that the prosecutor committed misconduct by misrepresenting that there were injuries to the victim's face when he cross-examined petitioner.  Petitioner claims that the prosecutor committed misconduct by asking petitioner about injuries to the victim's face after the medical examiner testified that there were no injuries to the victim's face.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas

review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012)(quoting *Harrington*, 562 U.S. at 103).

For a prosecutor's cross-examination of a witness to rise to the level of prosecutorial misconduct, a defendant is required to show intentional misconduct or reckless disregard for the truth on the part of the prosecutor. *See U.S. v. Sexton,* 119 F. App'x. 735, 750 (6th Cir. 2005)*; vacated in part on other grds,* 2005 WL 6011238 (6th Cir. April 4, 2005).  Although the medical examiner initially testified that there were no injuries to the victim's face, he subsequently testified that "there was a contusion on the front of the face" and suggested that it might have been caused by the victim being struck in the back of the head. (Tr. 10/22/13,

p. 18).  There was thus a good faith basis for the prosecution to ask petitioner about any injuries to the victim's face.  Moreover, even if the prosecutor's questions during the cross-examination of petitioner were somehow improper, they were not so flagrant as to amount to prosecutorial misconduct, in light of the fact that the comments were isolated and the evidence against petitioner was very strong. *See Smith v. Mitchell,* 567 F. 3d 246, 256 (6th Cir. 2009).

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C.

foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV. CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: September 22, 2017

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 22, 2017.

s/Deborah Tofil
Case Manager
